UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ELLIOTT,<br><br>  Plaintiff,<br><br>  v.<br><br>R. HART, et al.,<br><br>  Defendants. | No.  2:22-cv-1496 CSK P<br><br>ORDER AND<br><br>FINDINGS & RECOMMENDATIONS |

I.     INTRODUCTION

Plaintiff is a state prisoner proceeding pro se.  Defendants' fully briefed motion for summary judgment is before the Court.  Defendants move for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies as to his claims against defendant R. Hart; defendants R. Hart and E. Ramirez did not retaliate against plaintiff by issuing rules violation reports against him; and defendants are entitled to qualified immunity.  As discussed below, the Court recommends that the motion be denied in part and granted in part.

II.    COMPLAINT

In his verified complaint, plaintiff alleges that on July 7 and 18, 2022, respectively, defendants E. Ramirez and R. Hart, correctional officers with the Investigative Services Unit at California State Prison, Sacramento, retaliated against plaintiff by bringing false rules violation reports against plaintiff because he filed grievances against correctional officers Ehlers and

Herrera for sexual harassment.[1]  Pl.'s Compl. at 3-4 (ECF No. 1).  Plaintiff alleges that defendants R. Hart and E. Ramirez lied by accusing him of filing false accusations against officers Ehlers and Herrera and that defendants attempted to "cover up" the officers' "wrongdoings."  Id.  In his grievance against officer Ehlers, plaintiff alleged officer Ehlers inappropriately grabbed himself on July 6, 2022, at 6:30 a.m. and 8:30 a.m., and again on July 13, 2022, at 8:00 a.m.  See id. at 9-10.  In his grievance against officer Herrera, plaintiff claimed that officer Herrera inappropriately grabbed himself in front of plaintiff's cell on July 13, 2022, at 4:00 p.m.  See id. at 10.  Plaintiff did not name either officer Ehlers or officer Herrera as defendants herein.

III.   LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot

---

[1] Pursuant to plaintiff's notice of election (ECF No. 10), plaintiff's Eighth Amendment claims against defendants R. Hart and E. Ramirez were dismissed without prejudice on December 22, 2022.  (ECF No. 11 at 4.)

1  produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment
2  should be entered, after adequate time for discovery and upon motion, against a party who fails to
3  make a showing sufficient to establish the existence of an element essential to that party's case,
4  and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.
5  "[A] complete failure of proof concerning an essential element of the nonmoving party's case
6  necessarily renders all other facts immaterial." Id. at 323.

7  Consequently, if the moving party meets its initial responsibility, the burden then shifts to
8  the opposing party to establish that a genuine issue as to any material fact actually exists. See
9  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to
10 establish the existence of such a factual dispute, the opposing party may not rely upon the
11 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
12 form of affidavits, and/or admissible discovery material in support of its contention that such a
13 dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party
14 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
15 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
16 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
17 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return
18 a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
19 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3
20 (9th Cir. 2002).

21 In the endeavor to establish the existence of a factual dispute, the opposing party need not
22 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
23 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
24 trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce
25 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
26 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963
27 amendments).

28 In resolving a summary judgment motion, the court examines the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed on April 22, 2024, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defs.' Rand Notice to Pl. (ECF No. 34-5) (citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc)).

IV.   UNDISPUTED FACTS ("UDF")

For purposes of summary judgment, the undersigned finds these facts are undisputed. Where plaintiff failed to properly address defendant's assertion of fact as required, this Court considers the fact undisputed. See Fed. R. Civ. P. 56(e)(2).

1. In his verified complaint, plaintiff alleges that defendants R. Hart and E. Ramirez, correctional officers with the Investigative Services Unit ("I.S.U.") at California State Prison, Sacramento ("CSP-SAC"), retaliated against him by issuing him false Rules Violation Reports ("RVRs") for filing grievances against correctional officers Ehlers and Herrera alleging sexual harassment. Pl.'s Compl. at 3-4.

2. In the underlying grievances, plaintiff alleged that officer Ehlers inappropriately grabbed himself on July 6, 2022 at 6:30 a.m. and 8:30 a.m., and again on July 13, 2022 at 8:00

a.m. See id. at 9-10.[2]  Plaintiff also alleged that officer Herrera inappropriately grabbed himself in front of plaintiff's cell on July 13, 2022 at 4:00 p.m.  See id. at 10.

3. Plaintiff claims that defendants lied when they accused him of filing false accusations against officers Ehlers and Herrera and that defendants R. Hart and E. Ramirez attempted to "cover up" the officers' "wrongdoings." Id. at 3-4.

4. Defendants R. Hart and E. Ramirez were directed to investigate plaintiff's allegations against officers Herrera and Ehlers.  Declaration of R. Hart ("Hart Decl.) ¶¶ 2-3 (ECF No. 34-2); Declaration of E. Ramirez ("Ramirez Decl.") ¶¶ 2-3 (ECF No. 34-1).  As part of their investigation, defendants reviewed the video footage for the specified times.  Id.

5. On July 18, 2022, defendant R. Hart reviewed the Audio Video Surveillance System footage pertaining to three CDCR-602 grievance forms, Log No. 280474, Log No. 280481, and Log No. 280483.  Hart Decl. ¶ 3.

6. In each grievance, plaintiff alleged that CSP-SAC correctional officer Ehlers inappropriately grabbed himself at 8:00 a.m. on July 13, 2022 in front of plaintiff's cell.  Hart Decl. ¶ 4.  Defendant R. Hart reviewed the video footage for that time and date and

---

[2] No party submitted copies of plaintiff's initial grievances submitted against officers Herrera and Ehlers; rather, the parties refer to how the grievances were characterized in the subsequent rules violation reports filed by defendants R. Hart and E. Ramirez and appended to plaintiff's complaint. Id. at 9-10.

Plaintiff provided copies of two subsequent grievances.  In the first grievance Log No. 280481, dated July 14, 2022, plaintiff (a) objected that officer Herrera was not allowed to be around plaintiff while plaintiff's PREA complaint against Herrera was pending; claimed it was plaintiff's right to file as many emergency 602s as he wants, noting there is no limit on filing emergency 602s; and (c) alleged that defendant E. Ramirez wrote plaintiff up for filing a PREA complaint on officer Herrera, "that is staff retaliation," and claimed it was officer Herrera who told defendant E. Ramirez to write plaintiff up. Id. at 11-12.

In the second grievance Log No. 285788, dated July 27, 2022, plaintiff wrote that he was just informed he was written up by ISU investigation unit for causing unnecessary work and objected that "this is I.S.U.['s] 'job' as [an] investigation team," and "has to do their 'job' no matter what." Id. at 24.  Plaintiff reiterated there is no limit on emergency 602s.  Plaintiff also alleged that defendant R. Hart "works for" officers Herrera and Campose, who harass plaintiff every time they come to plaintiff's door, and claimed the ISU investigations unit is part of the "foul play" because they "control the cameras." Id.  Plaintiff repeated: "That is [their] 'job' to do the investigation and if nothing looks wrong in [their] eyes, they are suppose[d] to dismiss what [plaintiff] wrote up.  They are not allowed to write [plaintiff] up for being harassed.  C/O Hart did foul play and violated [plaintiff's] rights." Id. at 23.

5

confirmed officer Ehlers did not inappropriately grab himself in front of plaintiff. Id.

7. In each grievance, plaintiff also alleged that CSP-SAC correctional officer Herrera inappropriately grabbed himself in front of plaintiff's cell at 4:00 p.m. on July 13, 2022. Hart Decl. ¶ 5. Defendant R. Hart reviewed the video footage for that time and date and confirmed that officer Herrera did not inappropriately grab himself in front of plaintiff. Id.

8. Further, defendant R. Hart determined that neither officer Herrera nor officer Ehlers were working in plaintiff's housing unit, CSP-SAC's B Facility, Building 7 at 8:00 a.m. or 4:00 p.m. on July 13, 2022. Id.

9. Plaintiff's allegations caused undue work and interfered with defendant R. Hart's ability to perform his duties by approximately two hours. Id. ¶ 6.

10. On July 7, 2022, defendant E. Ramirez reviewed the Audio Video Surveillance System footage pertaining to CDCR-602 grievance form, Log No. 276816, filed by plaintiff. Ramirez Decl. ¶ 3.

11. In grievance Log No. 276816, plaintiff alleged that CSP-SAC correctional officer Ehlers inappropriately grabbed himself in front of plaintiff at 6:30 a.m. and 8:30 a.m. on July 6, 2022. Ramirez Decl. ¶ 4. Defendant E. Ramirez reviewed the video footage for the specified times and confirmed officer Ehlers did not inappropriately grab himself in front of plaintiff. Id.

12. Plaintiff's allegations caused defendant E. Ramirez undue work and interfered with his ability to perform his duties by approximately two hours. Id. ¶ 5.

13. Plaintiff's false accusations constitute an abuse of the grievance process as defined by the California Code of Regulations, which states "[w]hen completing a CDCR Form 602-1, a claimant shall not: include information or accusations known to the claimant to be false." Cal. Code Regs. tit. 15, § 3482(d)(2) (2022). Accordingly, each defendant issued plaintiff a RVR for delaying a peace officer in the performance of duties. Ramirez Decl. ¶ 6; Hart Decl. ¶ 7; see also Pl.'s Compl. at 9-10 (ECF No. 1 at 9 (RVR No. 7201145), 10 (RVR No. 7204014).)

14. The California Department of Corrections and Rehabilitation ("CDCR") offers an administrative grievance process which consists of two levels of review—a review at the institutional level through the Office of Grievances ("OOG") and a review at the agency level through the Office of Appeals ("OOA"). Declaration of Howard E. Moseley, Associate Director of the OOA ("Moseley Decl.") ¶ 6 (ECF No. 34-3). If an inmate wishes to appeal the institutional decision he or she may do so in writing to the OOA within sixty calendar days. Id. Completion of the review process by the OOG resulting in a decision "identified as staff misconduct" constitutes exhaustion of all administrative remedies available to a claimant within the department. Id.

15. A search was conducted of the OOA computer system for all appeals received by the OOA from plaintiff between July 6, 2022 (the date of plaintiff's first allegation of sexual harassment in his complaint) and August 24, 2022 (the date plaintiff filed the operative complaint commencing this lawsuit), in which plaintiff alleged that: (a) defendant E. Ramirez issued plaintiff a RVR in retaliation for filing grievances; or (b) defendant R. Hart issued plaintiff a RVR in retaliation for filing grievances. Moseley Decl. ¶ 8. H. Moseley declares that no relevant appeals were found. Id.

16. A further review of the OOA computer showed that one appeal, Appeal Log No. 280481, was received by the OOA from plaintiff during the time period described above but it did not contain any allegations against defendants R. Hart or E. Ramirez.[3] Specifically, Appeal Log No. 280481 was received by the OOA from plaintiff on August 16, 2022, and was granted on October 16, 2022. Moseley Decl. ¶ 9.

V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

    A. <u>Standards Governing Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be

---

[3] Plaintiff's grievance Log No. 280481 also alleged that defendant E. Ramirez wrote plaintiff up for filing a PREA complaint on officer Herrera, "that is staff retaliation," and claimed it was officer Herrera who told defendant E. Ramirez to write plaintiff up. Pl.'s Compl. at 11-12. However, when plaintiff appealed the denial of this grievance, he did not include this specific allegation against defendant E. Ramirez in his appeal to the OOA. Moseley Decl. at 32. In his appeal, plaintiff did state that the I.S.U. was working with officer Herrera. Id.

brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  There is no "special circumstances" exception to the PLRA's rule of exhaustion prior to filing "any action." Ross v. Blake, 578 U.S. 632, 638-39 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

However, the PLRA provides one textual exception by using the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Ross, 578 U.S. at 642 (quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001)).  The Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643-44.  Such circumstances are:

> (1) when the administrative procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 578 U.S. at 643-44).  The Ninth Circuit characterized the list in Ross as "non-exhaustive," stating that "the PLRA does not require exhaustion when circumstances render administrative remedies effectively unavailable." Andres, 867 F.3d at 1078 (internal quotations and citation omitted).  "When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Id.

In addition, for exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

8

"Nonexhaustion" is an affirmative defense and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino v. Baca, 747 F.3d 1162, 1171-72 (9th Cir. 2014). A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth, 532 U.S. at 738. If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Id. (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof" remains with the defendants. Albino, 747 F.3d at 1172-73. Only "[i]f the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, [is] a defendant is entitled to summary judgment under Rule 56." Id. at 1166.

      B.     California's Inmate Appeal Process

Effective January 5, 2022, the grievance process consisted of two levels of review: (1) the institutional-level review (OOG), and (2) the agency review conducted by the OOA. Cal. Code Regs. tit. 15, §§ 3481(a)-(b). California's regulations require the inmate to file the grievance on the CDCR Form 602-1, "describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the [inmate's] knowledge," and include any supporting documents. Id. § 3482(c)(1), (3), (4). If an inmate wishes to appeal the institutional decision they may do so in writing to the OOA within sixty calendar days. Id. § 3484(b). A substantive decision by the OOA exhausts administrative remedies. Id. § 3485(*l*). Completion of the review process by the OOG resulting in a decision "identified as staff misconduct" also constitutes exhaustion of all administrative remedies available to an inmate. Id. § 3485(g)(8).

C. The Parties' Arguments

In their motion, defendants argue that plaintiff failed to exhaust his administrative remedies as to his retaliation claim against defendant R. Hart. Defs.' Mot. at 10 (ECF No. 34). Defendants claim plaintiff filed grievances alleging that defendants R. Hart and E. Ramirez retaliated against plaintiff, but CDCR records show plaintiff did not appeal the OOG decision as to defendant R. Hart before plaintiff filed this action. Id. at 11. Thus, defendants contend plaintiff's claim against defendant R. Hart should be dismissed for failure to properly exhaust administrative remedies.

In his opposition, plaintiff claims that a prisoner has a right to file a grievance if he feels "his life is not safe," but plaintiff did not contend that he appealed the grievance against R. Hart to the OOA or argue that administrative remedies were rendered unavailable in some way. Pl.'s Opp'n at 2 (ECF No. 40).

In reply, defendants reiterate that the undisputed evidence they submitted, including a declaration, and supporting documents from H. Moseley, demonstrate that plaintiff failed to pursue a grievance as to defendant R. Hart through the final level of review before filing this action. Defs.' Reply at 6 (ECF No. 41). Defendants also noted that in plaintiff's first opposition, plaintiff stated he filed a grievance against officer Herrera for sexual harassment in July 2022, and argued that such motion was proof plaintiff had exhausted this claim. Id. Defendants counter that plaintiff's argument fails to address or refute defendants' undisputed evidence that plaintiff failed to fully exhaust his claims against defendant R. Hart. Id.

D. Discussion

    1. Plaintiff Filed Multiple Oppositions

Plaintiff's first and second oppositions filed on May 20, 2024 and June 4, 2024, were not signed by plaintiff. (ECF Nos. 35, 38.) Plaintiff was provided opportunities to submit an opposition bearing his signature, which he did on July 1, 2024. (ECF No. 40.) Plaintiff's third opposition, which he signed, is essentially the same as his second unsigned opposition. (Compare ECF No. 38 to ECF No. 40.) Rule 11(a) of the Federal Rules of Civil Procedure requires the Court to strike an unsigned paper unless the omission is promptly corrected. Id. Plaintiff

corrected the omission as to his second opposition by filing a third opposition bearing his signature, so no order to strike is required as to the second and third oppositions. (ECF Nos. 38, 40.)

However, plaintiff did not incorporate the arguments contained in his first opposition into his third opposition bearing his signature. (Compare ECF No. 35 to ECF No. 40.) Therefore, the Court strikes plaintiff's first opposition as required under Rule 11(a).[4] (ECF No. 35.) All subsequent references to plaintiff's opposition are to plaintiff's signed opposition. (ECF No. 40.)

### 2. Administrative Remedies Were Available

The Court reviewed the record, including plaintiff's complaint and attachments, defendants' motion and the supporting declarations and exhibits, and finds that it is undisputed that the administrative remedies set forth in the California Code of Regulations, Title 15, sections 3480 - 3487, were available to plaintiff in 2022 when defendants issued RVRs against plaintiff.

### 3. Defendants Failed to Provide Relevant Grievance Number

The records provided by H. Moseley do not show a specific appeal with the OOA as to defendant R. Hart. However, the chart provided by H. Moseley does not set forth the names of the officers listed in the grievance or appeal, and many of the entries were identified as staff misconduct, which exhausts the inmate's grievance without having to file an appeal because the grievance must be investigated. Cal. Code Regs. tit. 15, § 3485(g)(8). While H. Moseley declared no relevant appeal was located, Moseley's declaration did not address the myriad grievances that were identified as staff complaints and therefore would not require an appeal. H. Moseley did not declare that plaintiff's grievance against defendant R. Hart was categorized in such a way that it required that plaintiff file an appeal with the OOA.

---

[4] Even if the Court considered plaintiff's argument in his first opposition that his grievance concerning officer Herrera demonstrated plaintiff exhausted his claim as to defendant R. Hart (ECF No. 35), such argument fails. Plaintiff was required to file a grievance raising his retaliation claim against defendant R. Hart. Whether or not plaintiff filed a grievance as to officer Herrera's actions is not relevant to whether or not plaintiff filed a grievance against defendant R. Hart alleging that defendant R. Hart retaliated against plaintiff by filing a purportedly false RVR. In addition, the grievance plaintiff appended to his first opposition, Log No. 280481, was also provided by defendants. Moseley Decl., Ex. 2 (ECF No. 34-3 at 29-35).

Defendants' motion and reply failed to identify the specific grievance number they claim plaintiff failed to pursue against defendant R. Hart through the OOA.

H. Moseley reviewed records from July 6, 2022 through August 24, 2022; such review encompassed plaintiff's grievances with Log Numbers 276816 through 296842. Moseley Decl. at 13-18. Obviously, the eleven grievances categorized as PREA complaints were not the grievances plaintiff filed against defendant R. Hart. However, there were many other grievances with various categories and subcategories, such as "general employee performance," and "other staff misconduct: NOS," that were also identified as staff misconduct.[5] See, e.g., Log Nos. 277227, 278644, 278651, 278655, 280474, 280483, 281782, 281785, etc. Because defendants did not identify the grievance number, the Court is unable to confirm that plaintiff's grievance was not identified as staff misconduct such that he was required to pursue the grievance through the OOA yet failed to do so. Thus, the Court finds that defendants failed to meet their burden in demonstrating plaintiff failed to exhaust his administrative remedies as to defendant R. Hart, and their motion on exhaustion grounds should be denied.

VI.  **RETALIATION**

   A.  Standards Governing Retaliation Claims

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Although "a corrections officer may not retaliate against a prisoner for exercising

---

[5] The Court acknowledges that in grievance Log No. 285788, plaintiff complained he had just been written up, and that defendant R. Hart "works" for officer Herrera who harassed plaintiff. Pl.'s Compl. at 23-24; n.2 above. This grievance was rejected by the OOG. Moseley Decl. at 15. While rejections do not exhaust administrative remedies, California Code of Regulations, Title 15, § 3483(*l*)(1), defendants do not argue that plaintiff's grievance against defendant R. Hart was rejected.

his First Amendment right to report staff misconduct," courts must nonetheless "defer to reasonable decisions of prison officials." Shepard v. Quillen, 840 F.3d 686, 688 (9th Cir. 2016).

### B. The Parties' Arguments

Defendants do not dispute that they each issued an RVR against plaintiff but argue that the evidence shows the RVRs were issued because plaintiff abused the grievance process by filing false allegations in violation of CDCR regulations, not simply because plaintiff used the grievance process. Defs.' Mot. at 12 (citing Cal. Code Regs. tit. 15 § 3482(d)(2)). In addition, defendants contend that the RVRs served a legitimate penological purpose—to discourage abuse of the grievance process. Id. Defendants argue that plaintiff's false allegations against officers Ehlers and Herrera delayed defendants in the performance of their duties, and "squandered limited institutional resources and distracted defendants from legitimate work important to serve the inmate population and meet CSP-SAC's operational and management needs." Id. at 13. Further, defendants contend that plaintiff cannot demonstrate causation; that is, that the RVRs were issued to plaintiff as a result of retaliation because the RVRs were issued due to plaintiff's abuse of the grievance process by filing allegations he knew were false. Id. Defendants argue that plaintiff "does not have a right protected under the First Amendment to file frivolous inmate grievances." Id. Defendants contend that plaintiff admitted he knew the video footage would prove he was lying, based on plaintiff's statement concerning defendants' investigation:

> That is [defendants] 'job' to do the investigation and if nothing looks wrong in there [sic] eyes. They [defendants] are suppose[d] to dismiss what I wrote up."

Id. at 13-14 (citing Pl.'s Compl. at 23). Thus, defendants contend they are entitled to summary judgment on plaintiff's retaliation claims.

Plaintiff's two-page opposition is signed, but not verified. Pl.'s Opp'n at 2 (ECF No. 40). Plaintiff states that it is well established that a prisoner has a First Amendment right to file prison grievances if he feels his life is not safe, and that retaliation against a prisoner for exercising such right is a constitutional violation. Id. Plaintiff also states the following incomplete sentence: "in an assertion that a state actor took some adverse action to chill the inmates exercise of plaintiff's First Amendment right." Id. But this incomplete sentence simply repeats some elements of a

13

1  retaliation claim.[6]  Id.

2  In reply, defendants contend that plaintiff's oppositions fail to address defendants' arguments or present facts to establish a genuine dispute of material fact as to the merits of plaintiff's retaliation claim.  Defs.' Reply at 5 (citing ECF Nos. 35, 38, 40).  Rather, defendants contend that plaintiff's second and third oppositions merely recite First Amendment retaliation case law.  Id. (citing ECF Nos. 38, 40).  Defendants argue that plaintiff's generalized statement that defendant R. Hart violated plaintiff's First Amendment rights is insufficient.  Id. (citing Anderson, 477 U.S. at 247-48 (nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment)).  Further, defendants argue that although plaintiff listed a few elements of a First Amendment retaliation claim, plaintiff failed to provide any facts or evidence in support of each required element.  (Id.)

       C.     Discussion

             1.     No Evidence of Retaliatory Motive

The Court finds there is insufficient evidence to raise a triable issue of fact concerning the existence of a retaliatory motive on the part of either defendant R. Hart or defendant E. Ramirez.

To establish a retaliatory motive, plaintiff is required to "show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."  Brodheim, 584 F.3d at 1271 (internal quotation marks and citation omitted); see Hartman v. Moore, 547 U.S. 250, 259 (2006) (explaining that a section 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action").  In other words, plaintiff must "put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendants'] intent" in issuing the RVRs against plaintiff.  Brodheim, 584 F.3d at 1271 (quoting Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)).

Here, it is undisputed that defendants R. Hart and E. Ramirez issued RVRs charging

---

[6] The Court notes that even if plaintiff's first opposition had not been stricken as unsigned, plaintiff merely repeated the elements of a retaliation claim, without adding any specific facts or evidence in support.  (ECF No. 35.)

14

plaintiff with making false claims of sexual harassment against officers Ehlers and Herrera in plaintiff's grievances. Plaintiff contends he was issued such RVRs for using the grievance process, a right that is protected under the First Amendment. However, defendants adduced evidence that the RVRs were issued because plaintiff's false allegations against officers Ehlers and Herrera resulted in undue work and interfered with their abilities to perform their duties and constituted an abuse of the grievance process. Both defendant R. Hart and E. Ramirez reviewed the relevant footage and determined that plaintiff's accusations were not true. Ramirez Decl, ¶¶3-4; ¶ Hart Decl, ¶¶ 3-5. In addition, defendant R. Hart determined that neither officer Ehlers nor officer Herrera were working in plaintiff's housing unit on July 13, 2022. Hart Decl. ¶¶ 4, 5. Plaintiff adduced no competent evidence to the contrary.

Aside from plaintiff's conclusory statements in his complaint, plaintiff adduced no circumstantial or other evidence to suggest either defendant R. Hart or defendant E. Ramirez issued the RVRs in retaliation for plaintiff's grievances alleging sexual harassment by officers Ehlers and Herrera rather than for the legitimate penological purpose of dissuading inmates from filing false accusations. Plaintiff points to no comments either defendant made that would evidence retaliatory intent. "Mere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). The fact that defendants issued RVRs based on plaintiff's false accusations of sexual harassment contained in plaintiff's grievances, standing alone, is insufficient to demonstrate that either defendant issued the RVRs with a retaliatory motive.

### 2. No Absence of Legitimate Correctional Purpose

The Court finds that plaintiff failed to demonstrate there remains a triable dispute of material fact as to whether defendants acted without a legitimate correctional purpose.

Plaintiff bears the burden to prove the absence of a "legitimate correctional purpose motivating" the adverse actions. See Pratt, 65 F.3d at 808. In addition, this Court must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. at 807 (internal quotation marks and citation omitted). An action does not reasonably advance a legitimate correctional goal when

it is arbitrary and capricious or "unnecessary to the maintenance and order in the institution." Watison, 668 F.3d at 1115 (internal quotation marks omitted).

Here, defendants adduced evidence that plaintiff's filing of false accusations against officers Ehlers and Herrera constituted an abuse of the grievance process in violation of California Code of Regulations, Title 15, § 3482(d)(2), which delayed defendants in the performance of their duties, and they filed the RVRs to dissuade inmates from filing such false accusations. Plaintiff's allegations in his complaint and opposition do not challenge the correctional purpose cited by defendants. Rather, he simply contends he was written up for exercising his constitutional right to file a grievance. Absent retaliatory motive, as discussed above, this Court cannot find that there was an absence of legitimate correctional purpose in charging plaintiff with the RVRs at issue here. Dissuading inmates from filing false accusations against correctional officers is a legitimate penological goal. The record reflects that I.S.U. investigators are charged with investigating allegations of sexual harassment, which takes time, and if the investigation determines the allegations were false, the time spent in such investigation deprived such officers of time they could have spent on legitimate claims. Thus, charging inmates for abusing the grievance process and delaying peace officers in their duties helps maintain order in the prison by dissuading inmates from filing false accusations that usurp valuable correctional officer time. The Court finds that defendants had a legitimate penological purpose for issuing the RVRs, and plaintiff failed to rebut such evidence.

### 3. Conclusion

For all of the above reasons, the Court recommends that defendants' motion for summary judgment on plaintiff's retaliation claims be granted, and judgment be entered.

## VII. QUALIFIED IMMUNITY

### A. Legal Standards

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity

shields an officer from liability even if his or her action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation marks and citation omitted).

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that 'every reasonable official would [have understood] that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

B.     Discussion

Defendants also move for qualified immunity on the grounds that the undisputed facts demonstrate they did not violate plaintiff's First Amendment right against retaliation, and because it would not have been clear to a reasonable official in defendants' positions that issuing plaintiff RVRs for filing false allegations in violation of California Code of Regulations, Title 15, § 3482(d)(2) was unlawful. Defs.' Mot. at 15. "Because the Court has found that there is no genuine issue of material fact to support plaintiff's claims, 'there is no necessity for further inquiries concerning qualified immunity.'" Los Angeles Cnty. v. Rettele, 550 U.S. 609, 616 (2007) (quoting Saucier, 533 U.S. at 201). Thus, the Court declines to address the issue of qualified immunity.

VIII.  CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to assign a district judge to this case; and
2. The Clerk of the Court is directed to strike plaintiff's unsigned opposition (ECF No. 35).

Further, IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment based on plaintiff's alleged failure to exhaust administrative remedies as to defendant R. Hart (ECF No. 34) be denied.
2. Defendants' motion for summary judgment on plaintiff's retaliation claims (ECF No. 34) be granted.
3. Judgment be granted as to defendants R. Hart and E. Ramirez, and this action be terminated.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 19, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/elli1496.msj.csk